# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| EDWARD CODY GOODRICH, )<br>    Plaintiff, )<br>            )<br>    v.        )<br>            )<br>NANCY A. BERRYHILL, )<br>Deputy Commissioner for Operations, )<br>Social Security Administration, )<br>    Defendant. ) | CAUSE NO.: 4:18-CV-3-JEM |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Edward Cody Goodrich on January 12, 2018, and Plaintiff's Brief [DE 24], filed on June 22, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 13, 2018, the Commissioner filed a response, and on October 18, 2018, Plaintiff filed a reply.

**I.    Background**

On May 28, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that he became disabled on October 9, 2013. Plaintiff's applications were denied initially and upon reconsideration. On December 14, 2016, Administrative Law Judge ("ALJ") Shane McGovern held a hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. Plaintiff's mother also testified. On March 8, 2017, the ALJ issued a decision finding that Plaintiff was not disabled, and Plaintiff appealed the decision.

The ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2. The claimant has not engaged in substantial gainful activity since October 9, 2013, the alleged onset date.

3. The claimant has the following severe impairments: epilepsy; depression; social anxiety disorder; generalized anxiety disorder; and panic disorder with agoraphobia.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is never to climb ladders, ropes, or scaffolds; the claimant is limited to no more than frequent climbing of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling; the claimant must avoid all exposure to moving mechanical parts and unprotected heights; the claimant is limited to simple routine and repetitive tasks and work that requires no more than simple work related decisions; the claimant must avoid all interaction with the public and no more than occasional interaction with coworkers and supervisors.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 9, 2013, through the date of the decision.

The Appeals Council did not take jurisdiction of the claim, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,*

705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III.    Analysis

Plaintiff argues that the ALJ made two errors in assessing his mental impairments. First, Plaintiff contends that the ALJ erred in assigning great weight to the opinions of two non-examining state agency psychological consultants who gave their opinions based on evidence through December 29, 2014, but who did not review any of the subsequent medical evidence that supports

4

a finding of disability. Plaintiff contends that this error is compounded by the ALJ giving "little to no" weight to the July 2014 opinion of Plaintiff's treating psychiatrist, whose opinion was consistent with the post-December 2014 medical evidence. Second, Plaintiff argues that, due to new criteria for the evaluation of depression and anxiety impairments that went into effect on January 7, 2017, which was after the psychiatric consultants' opinions but before the ALJ's March 8, 2017 decision, the ALJ should have solicited the opinion of a medical expert. Remand is required on both grounds.

First, remand is required because the ALJ gave "great weight" to the opinions of the state agency psychiatric consultants, Dr. Kari Kennedy and Dr. Joelle J. Larsen, when neither consultant had the opportunity to consider substantial new evidence. Dr. Kennedy gave an opinion on September 8, 2014, at the initial level of review, and Dr. Larsen gave an opinion at the reconsideration level on January 29, 2015, having considered evidence through December 29, 2014. AR 110, 140. However, subsequent evidence includes a week-long hospitalization for a suicide attempt by overdose in January 2015, ongoing regular therapy, a psychiatric evaluation in May 2015 at Wabash Valley Alliance, an emergency room visit due to depression in September 2015, and a change of psychiatrist with ongoing evaluations, new therapy regimes, and new medications at Franciscan Behavioral Health through 2016. Neither Dr. Kennedy nor Dr. Larsen had an opportunity to consider the impact of those subsequent records on their opinions, and the ALJ did not obtain an updated opinion. As discussed in detail below, the post-December 2014 medical records are consistent with the July 2014 opinion of Plaintiff's treating psychiatrist, Dr. Toth, to which the ALJ gave "little to no" weight.

"An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."

5

*Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)); *see also Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) (holding that the ALJ's error in interpreting MRI results himself could have been avoided by seeking an updated medical opinion (citing *Goins*, 764 F.3d at 680; *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000))). Like in *Moreno* and *Stage*, Plaintiff's post-December 2014 medical records contain significant, new developments that could have reasonably changed the consultants' opinions.

First, Plaintiff attempted suicide on January 18, 2015, resulting in a week-long medical and psychiatric hospital admission. AR 751-70. Neither Dr. Kennedy nor Dr. Larsen had the opportunity to consider the records of Plaintiff's suicide attempt and hospitalization. Rather, the ALJ improperly "played doctor" by concluding, without support from a medical source, that Plaintiff's hospitalization for the January 2015 suicide attempt was related to breaking up with his girlfriend rather than his mental impairments. AR 27; *see Moreno*, 882 F.3d at 729. Yet, Plaintiff's diagnosed mental impairments included depression, anxiety, and panic disorder with agoraphobia, and Plaintiff's only social contact was his girlfriend. The intake records in the psychiatric unit indicate that Plaintiff's mood had been suicidal since November 2014 and that he had been lapsing into worsening depression and instability in the three months preceding the suicide attempt. AR 751. Plaintiff remained in the hospital until January 26, 2015. AR 768. The ALJ did not discuss any of Plaintiff's symptoms, treatment, or medications, and the ALJ's own lay assessment of the suicide attempt is "not justified under the circumstances of this case." *Moreno*, 882 F.3d at 729 (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"); *Stage*, 812 F.3d at 1125 (finding that the ALJ erred by evaluating the significance

6

of a subsequent treating physician's report that contained significant, new, and potentially decisive findings without the input of a medical expert and instead relying on an outdated assessment); *Goins*, 764 F.3d at 680 (criticizing the ALJ for "playing doctor" by summarizing the results of an MRI without input from an expert)).

Second, on May 1, 2015, Dr. Zeinab Tobaa conducted a psychiatric evaluation of Plaintiff at Wabash Valley Alliance and reported that Plaintiff had memory issues, spoke in a low and soft voice, and had difficulty expressing himself. AR 912. Dr. Tobaa was concerned about Plaintiff's inability to provide accurate information. Dr. Tobaa diagnosed major depressive disorder, recurrent, moderate; panic disorder with agoraphobia; and the possibility of bipolar disorder or pervasive developmental disorder. AR 913. Dr. Tobaa gave an Axis IV diagnosis that included the inability to hold a job due to depression and anxiety, limited social support, financial difficulties, and limited social skills. *Id*. Not only did Dr. Kennedy and Dr. Larsen not review this evaluation, the ALJ also did not discuss this May 1, 2015 psychiatric evaluation. Although the Commissioner contends that the ALJ "plainly considered Plaintiff's mental health treatment notes when he evaluated Plaintiff's mental RFC," there is no reference to this significant medical record that appears to support greater limitations than those imposed by the ALJ. It was an error not to discuss this record.

Likewise, neither Dr. Kennedy nor Dr. Larsen could have considered Plaintiff's September 20, 2015 emergency room visit for a severe episode of depression. AR 946-53. Although the ALJ could have discussed this record, he did not. The Commissioner again contends, this time in a footnote, that the ALJ must have considered the record and that the ALJ is not required to address every piece of evidence in the record. The Court is not persuaded; this is a second, significant piece of evidence that the ALJ failed to discuss.

7

Following the September 20, 2015 emergency room visit, Plaintiff was referred to a new psychiatrist and a new therapist at Franciscan Behavior Sciences in Lafayette, Indiana. At the initial evaluation, Randall Pickering, LCSW, observed that Plaintiff was suffering "significant distress and functional impairment from the synergistic combination of epilepsy, depression, anxiety and interpersonal/relationship problems" and coded the case for treatment of major depression, recurrent, moderate and generalized anxiety disorder to be treated by a therapist until a psychiatrist was available. AR 1204. In the October 13, 2015 visit report, Mr. Pickering noted that Plaintiff had gotten tearful, upset, and wanted to leave, cutting the session short as a result, which, as discussed below, is similar to the behavior noted by treating psychiatrist Dr. Toth in 2014. AR 1203. On November 23, 2015, Plaintiff met with psychiatrist Dr. Joseph Destefano, who diagnosed generalized anxiety disorder, and depression/dysthymia. AR 1201-02. Dr. Destefano noted that Plaintiff's anxiety had worsened on a lower dosage of Lorazepam and was working to adjust the medications. AR 1202.

Over the next several months, Plaintiff was able to increase his therapy session time to 44 or 52 minutes before leaving and was working on exercises such as going to stores and going outside. AR 1197. In 2016, a diagnosis of ADD was added, and Plaintiff was prescribed Adderall. AR 1196. In April 26, 2016 therapy notes, Mr. Pickering noted that Plaintiff was "tearful and rather discouraged about his life" and reported little purposeful out-of-the-home activity since the last visit. AR 1195. Mr. Pickering and Plaintiff discussed other treatment options such as a local partial hospitalization program that would provide more intensive service compared with the every-two-week schedule they were then-currently following. *Id*. In May 2016, Dr. Destefano changed the anxiety disorder diagnosis to "anxiety with associated symptoms of Social Anxiety Disorder-

8

ongoing efforts in Therapy." AR 1193. Dr. Destefano also noted that, although Plaintiff was grossly cognitively intact, he was nevertheless "hampered by mental health issues and likely ADD for which treatment with Ritalin appears to be helpful and well tolerated with some prospect of improving mood, motivation and prospects in Individual Therapy which the patient wants to continue." AR 1193.

July and August 2016 treatment notes reported Plaintiff as being "stuck" and unable to make movement on any goals. AR 1190. On July 22, 2016, Mr. Pickering commented, "[m]ild progress not withstanding, [Plaintiff] remains functionally impaired due to significant anxiety with Agoraphobic avoidance, possible social phobia, and mild versus moderate depression." (AR 1191). In contrast, on that same date, Dr. Destefano noted that it is "not clear whether or not the patient perceives any need to make changes in his life since he appears satisfied with his life and range of activities currently." (AR 1190). Yet, a month later, on August 22, 2016, Mr. Pickering noted that Plaintiff "became slightly tearful when discussing his current life situation," that Plaintiff would continue to be seen once per month, but that it was "uncertain how much progress he is capable of at the present time." AR 1190. In November and December 2016, Plaintiff reported panic attacks and was more depressed. AR 1186-88. On December 8, 2016, Plaintiff reported that he was "beyond defeated" in terms of being able to influence his life and that he had no leisure activities. AR 1186.

Importantly, the post-December 2014 records of Plaintiff's mental conditions are consistent with the earlier July 21, 2014 opinion of James Toth, Psy.D., Plaintiff's treating psychiatrist. And, the ALJ's reasons for giving "little to no" weight to Dr. Toth's opinion are inadequate to build an accurate and logical bridge between the evidence and his decision in light of that consistency. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (quoting *Beardsley v. Colvin*, 758 F.3d 834,

9

837 (7th Cir. 2014)). "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

Dr. Toth was Plaintiff's treating psychiatrist from October 2013 to July 2014 and opined on July 21, 2014, just months before the state agency psychiatric opinions, that Plaintiff was unable to hold a job due to anxiety and had left therapy sessions twice due to feeling anxious. AR 625. Dr. Toth supported this opinion by identifying Plaintiff's depressive and panic/anxiety symptoms. As for "Depressive Symptoms," Dr. Toth wrote: "Edward experiences sadness nearly all day every day; has episodes of crying for no apparent reason; loss of appetite; anhedonia (loss of interest/pleasure); past suicidal ideation; upset stomach; difficulty concentrating; insomnia; fatigue; feelings of worthlessness & hopelessness. These impair not only his social and occupational functioning, but also his ability to attend to activities of daily living." AR 625. For symptoms of "Panic/Anxiety," Dr. Toth wrote: "Edward experiences panic attacks (increased heart rate, sweating, physical tension, shaking, difficulty breathing, dizziness, fear). He fears future attacks, avoids crowds, open spaces, people, does not often [leave] his house, cannot calm himself during attacks." *Id*. Dr. Toth reported

10

the use of cognitive behavioral therapy to change negative thought patterns, opined that Plaintiff lacks insight as to how his own thoughts and behaviors influence his emotions, and commented that Plaintiff's progress has been slow. AR 629. He further opined that Plaintiff's "current prognosis is guarded. While Edward has made some progress toward managing his anxiety, his overall anxiety and depression have not changed as much as hoped for." AR 629.

In giving Dr. Toth's opinion "little to no weight," the ALJ stated only that Dr. Toth's opinion appears to be "no more than the subjective complaints of the claimant" with "objective reports (alert, oriented, appropriate as to his clothing, casual, neat, clean, well groomed, motivated, cooperative, normal as to his speech, coherent, relevant, and without problem as to his thought process)." AR 29 (citing Ex. 7F). However, all findings in psychiatric notes must be considered, even if they are based on the patient's own account of his mental symptoms. *See Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (citing *Price v. Colvin*, 794 F.3d 836, 839-40 (7th Cir. 2015)); *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016) (noting that "a psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning"). The ALJ did not discuss the content of Dr. Toth's objective findings regarding Plaintiff's mental status and did not acknowledge the consistency of Dr. Toth's findings with the post-December 2014 records.

The ALJ again improperly "played doctor" by interpreting Dr. Toth's comments regarding Plaintiff leaving sessions early in a manner contrary to Dr. Toth's own explanation. In a footnote, the ALJ wrote, "There is a report of the claimant leaving his therapy sessions early on two occasions, with objective report of the claimant appearing upset and anxious. However, an individual leaving a voluntary session conducted at his own volition does not necessarily mean that he would have the same conduct in a work situation." AR 27, n. 4; *see Moreno*, 882 F.3d at 729.

11

This unsupported conclusion directly contradicts Dr. Toth's report of the early departures. Dr. Toth considered both instances of leaving early to constitute panic attacks, which Dr. Toth identified when asked to describe any episodes of "deterioration that have occurred in situations similar to those *that might be encountered at work*." AR 628 (emphasis added). In response, Dr. Toth wrote: "Even in therapy I have seen the level of his panic attacks and their severity: in two separate sessions with me previously, Edward asked to end the sessions early by 30 minutes (after 30 minutes in session each) because he was so terribly anxious and panicked that the only way he was able to calm down was for him to leave [the] session." AR 625, 628. This issue goes directly to Plaintiff's ability to function in the workplace.

Moreover, Dr. Toth's opinion and the post-December 2014 records are consistent with Plaintiff's description of his anxiety. Plaintiff testified at the hearing that he would sweat and shake and that his neck would twitch, and he explained that it was hard to speak because his brain would be racing and everything got jumbled. AR 57. He also testified that he would have to lie down to calm down and that sometimes it takes a couple of hours to calm down. Plaintiff explained that, because of his strong social anxiety, sometimes just seeing people would trigger a panic attack. For periods in 2015, he stayed in his room and cancelled appointments. AR 62. He testified that he could only shop when accompanied by his mother and at times of day when there are few people around. He testified that there were times when, even with his mother, he could not stay in a store because it was overwhelming.[1]

---

[1] Although Plaintiff does not contest the ALJ's treatment of his subjective statements in his appeal, the Court nevertheless finds that the ALJ's assessment of Plaintiff's subjective statements does not detract from Plaintiff's testimony cited here. In his decision, the ALJ found that "inconsistencies detract from the persuasiveness" of Plaintiff's subjective reports. AR 26. The ALJ gave two such examples.
   First, the ALJ found that Plaintiff offered inconsistent statements when Plaintiff wrote on the Adult Function Report: "I do not have a social life. I spend time with my girlfriend daily." AR 26 (citing Ex. 3E/5). It is unclear how

Finally, in discussing the post-2014 records, the ALJ identified only those findings that supported his RFC determination without addressing the instances in the same records of Plaintiff's consistent symptoms of anxiety and the related diagnoses that are favorable to Plaintiff's claim of disability. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The ALJ first states, "the claimant's psychiatric complaints revolve around his complaints of depression and anxiety (a large portion of which is specific to social anxiety), with diagnoses as to depression, major depression, bipolar disorder, anxiety disorder, generalized anxiety disorder, and panic disorder with agoraphobia." AR 27. This statement offers no analysis of the records or whether Plaintiff can perform work and does not explain why social anxiety could not contribute to Plaintiff's disability.

In the next sentence, the ALJ likewise characterizes the records in a manner that supports the RFC without addressing the evidence favorable to Plaintiff: "However, other than objective reports as to appearing depressed and anxious, the claimant's clinical examinations are without any significant symptomology (The claimant is frequently documented as alert, oriented, pleasant, cooperative, dressed appropriately, well groomed, organized and goal directed as to his thoughts, normal as to his speech, intact as to his associations, without abnormal psychotic thoughts, fair as

---

these statements are inconsistent if Plaintiff defined "social life" as meaning contact with people other than his girlfriend. Plaintiff's therapist, John Peterson, completed a Function Report - Adult - Third Party on August 21, 2014. AR 296. In answering a question about Plaintiff's social activities, Mr. Peterson wrote that Plaintiff spends time with his mother, stepfather, and girlfriend but then also wrote that Plaintiff "never socializes" because he is too anxious and depressed. *Id*. Mr. Peterson did not find it inconsistent to say that Plaintiff spent time with his girlfriend yet never socialized.

    Second, the ALJ notes that "the record contains *reports* that the information supplied by the claimant is 'counter to the notes from his last visit,' which again, indicates a lack of consistency as to the claimant's subjective reports." AR 26 (citing Ex. 29F/6) (emphasis added). The single statement, found at page 7 of Exhibit 29, is made by Plaintiff's therapist, Randall Pickering, on July 22, 2016, who wrote, noting that they had not met for several months: "He feels as though he is becoming more discouraged and depressed, but this was *counter to the notes from his last visit* with the FPN psychiatrist." AR 1192 (emphasis added). The May 27, 2016 report of the prior visit with Dr. Destefano, the FPN psychiatrist, does not explicitly state that Plaintiff was less discouraged or less depressed but does note that the treatment of Plaintiff's ADD with Ritalin has "some prospect of improving mood, motivation." AR 1193. Thus, it does not appear that Mr. Pickering was criticizing Plaintiff for being inconsistent but rather was comparing how Plaintiff was feeling in July 2016 with May 2016.

to insight and judgment, and average as to fund of knowledge/information.).” AR 27 (citing Ex. 16F/31; 12F/8, 18, 28; 16F/10, 13, 21; 7F2; 8F/7, 9; 9F/11, 14, 17; 17F/6, 13, 22; 18F/3; 29F/2, 5, 11).[2] The ALJ further describes the listed records as "individualized therapy notes, most of which are reports without objective findings or mental status examinations that focus upon [Plaintiff's] familial, social, and work concerns." AR 27 (citing Ex 29F). The ALJ is correct that the cited records generally provide some positive statements consistent with those listed by the ALJ. But the same records contain objective findings by the treating sources of "significant symptomology" that are favorable to Plaintiff, consistent with Dr. Toth's opinion and with Plaintiff's subjective statements.

In Exhibit 16F/31, the treater reported that Plaintiff had poor judgment and insight, had a sad and anxious mood and affect, and had poor attention and concentration. The primary diagnosis was major depression, recurrent with a secondary diagnosis of panic disorder with agoraphobia. AR 894 (3/3/2015). Also, the next day's record, not cited by the ALJ, reported anxiety, sad/depressed mood, low motivation, and low energy and contains the notation: "Ed seems bewildered by his anxiety and sadness. He has few social contacts and little interests to occupy himself at home. . . . Ed seems open to learning but only in the session. His memory is impaired." AR 896 (3/4/2015). During that visit, Plaintiff reported that he did not feel like doing anything, he mostly stayed in the house, and he had approximately three panic attacks a week that last thirty minutes.

In Exhibit 12F/8, the treater reported that Plaintiff had extremely poor recent and remote memory, below average fund of knowledge, poor judgment and insight, and poor attention and concentration. AR 720 (4/15/2014). In Exhibit 12F/18, Plaintiff reported increased depression and

---

[2] Exhibit 16F/13 is a duplicate of Exhibit 9F/11, *see* AR 651, 876; Exhibit 16F/10 is a duplicate of Exhibit 9F/14, *see* AR 654, 873; and Exhibit 12F/28 is a duplicate of Exhibit 9F/17, *see* AR 657, 740.

anxiety and poor appetite. On examination, the treater reported that Plaintiff had poor recent and remote memory and sad and anxious mood and affect and offers an assessment of "depression and anxiety persists." AR 730 (6/10/2014). Exhibit 12F/28, which is the same as Exhibit 9F/17, found that Plaintiff had less anxiety with a change in medication but that depression persisted and he was sleeping a lot with a poor appetite. AR 657, 740 (8/12/2014).

Exhibit 16F/10, which is the same as Exhibit 9F/14, is a treatment record from November 2014 that reports that a recent medication change made Plaintiff sleep all the time and that he was still having depression with significant mood swings. His judgment and insight were poor, his mood and affect was anxious, and his recent and remote memory was fair. AR 654, 873 (11/4/2014).

Exhibit 16F/13, which is the same as Exhibit 9F/11, is a treatment record from December 2014, which reports that Plaintiff was still having racing thoughts and mood swings, although his depression was less. His mood and affect were anxious. AR 651, 876 (12/2/2014).

Exhibit 7F/2 is Dr. Toth's "Report of Psychiatric Status" summarizing the treatment period of October 22, 2013, to July 18, 2014, to which the ALJ give "little to no" weight, and which is discussed in detail above. Although the ALJ is correct that Dr. Toth reported that Plaintiff was "clean and groomed" on page 3 of the report, Dr. Toth also noted that Plaintiff's behavior was influenced by anxiety and depression, that Plaintiff left two sessions because he felt too anxious, and that Plaintiff had difficulty focusing on a topic on a somewhat frequent basis. AR 625.

Exhibit 8F contains treatment records for seizures, not psychiatric impairments. Although page 7 does not contain any of the findings listed by the ALJ, page 8 indicates that Plaintiff was well groomed, pleasant, and cooperative. AR 636, 637. Likewise, page 9, cited by the ALJ, contains no reference to any psychiatric categories, but page 10 notes that Plaintiff was well groomed, pleasant,

15

and cooperative. AR 639, 640. There is no psychological evaluation in any of these records from June 2014 to December 2014. AR 631-40. Nevertheless, the record reflects that Plaintiff self-reported that he had been having memory problems, which is consistent with his psychiatric treatment records, and he also mentioned having panic attacks. AR 637.

In Exhibit 17F/6, Dr. Tobaa reported symptoms of depression and anxiety, feeling anxious, tense, and sad and that Plaintiff reported previous suicidal thoughts and one suicide attempt recently by overdosing. Dr. Tobaa found Plaintiff to be a poor historian, with severe memory problems, and unable to report his current medications. Dr. Tobaa found low average or borderline intellect. AR 907 (5/1/2015). In Exhibit 17F/13, Dr. Tobaa found Plaintiff to be not spontaneous, responding briefly, and having difficulty reporting symptoms and processing information. Dr. Tobaa noted that Plaintiff gets overwhelmed and frustrated easily. AR 919 (5/15/2015). In Exhibit 17F/22, Dr. Tobaa again found that Plaintiff was responding briefly, not spontaneous, a poor historian, and unable to provide accurate information. Dr. Tobaa further noted that Plaintiff has severe memory problems and difficulty processing and retaining information. AR 928 (6/11/2015).

In Exhibit 18F/3, the treater noted that Plaintiff did not appear nervous or anxious and had normal behavior; however, she also reported that Plaintiff exhibited a depressed mood and was tearful. AR 949 (9/20/2015).

As for Exhibit 29F/11, Dr. Destefano commented that Plaintiff's mood was euthymic and Plaintiff's affect as somewhat constricted but congruent. Dr. Destefano found Plaintiff to be cognitively intact "though hampered by anxiety and problems with self-esteem." Dr. Destefano found improvement in concentration, capacity to organize, and access to cognitive abilities. AR 1196 (3/2/2016). In Exhibit 29F/5, there is no reference to the behaviors listed by the ALJ, but, on

page 6, Dr. Destefano reported that Plaintiff was alert, oriented, and cooperative with appropriate behaviors, good grooming and hygiene, and neatly and appropriately attired. (7/22/2016). Yet, on page 5, Mr. Pickering found that Plaintiff "appears quite stuck and unable to make significant movement on any goals." AR 1190 (8/22/2016). In Exhibit 29F/2, Dr. Destefano wrote, "His range of daily activities is expanding but panic attacks when away from home still pose a problem for which the patient is amenable to carry 1 mg Lorazepam with him to use prn for panic attacks and for anticipatory anxiety that may contribute to panic attacks." AR 1187 (10/5/2016). The ALJ also failed to note the comment on page 1 of Exhibit 29F, which indicates that Plaintiff reported increased depression, being discouraged with his disability claim and life in general, feeling powerless, and having no leisure activities. AR 1186 (12/8/2016).

The ALJ's failure to discuss the favorable evidence is compounded by the ALJ's characterization of Plaintiff's treatment as "conservative in nature" because the ALJ omitted those records showing significant symptomology related to his anxiety and depression that would affect Plaintiff's ability to sustain work. Notably, Plaintiff lost his last job as a dishwasher at a college dining hall after spending too much time avoiding others in the locker room. The jobs identified by the vocational expert and relied upon by the ALJ at step five of kitchen helper, store laborer, and conveyer feeder off bearer appear similar to that of dishwasher to the extent that he may again feel the need to avoid others. There was no discussion of how much contact Plaintiff had as a dishwasher at the dining hall as compared to the contact he would have with coworkers in these positions.

Despite finding moderate limitations in "adaptation limitations," the ALJ does not appear to have included any related limitations in the RFC. "This area of mental functioning refers to the abilities to regulate emotions, control behavior, and *maintain well-being in a work setting*." 20

C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added). The regulations provide examples of this functional area, such as responding to demands, adapting to changes, managing psychologically based symptoms, distinguishing between acceptable and unacceptable work performance, setting realistic goals, and making plans for oneself independently of others. *Id*. These are the very concerns raised by Dr. Toth and Plaintiff's ongoing treatment records.

Without a discussion by the ALJ of the favorable medical records, the Court cannot find that the ALJ's weighing of the reviewing psychiatric consultant's opinions and Dr. Toth's opinion was supported by substantial evidence. Contrary to the Commissioner's argument, Plaintiff is not asking the Court to reweigh the evidence, but rather is asking the Court to require that the ALJ rely on medical expert opinion based on significant record evidence. Given the length of treatment, the consistent treatment notes, and the unsuccessful efforts to control Plaintiff's symptoms with medication, the ALJ erred by giving great weight to the opinions of Dr. Kennedy and Dr. Larsen and little to no weight to the opinion of Dr. Toth without addressing the impact of the post-December 2014 treatment records on their opinions. For these reasons, remand is required.

As a second basis for remand, Plaintiff argues that the ALJ erred at step three by relying on the opinions of Dr. Kennedy and Dr. Larsen because the opinions were given based on a prior version of Listings 12.04 and 12.06 and did not consider the post-December 2014 medical records. At step three of the sequential analysis, it is Plaintiff's burden to present evidence that his impairments meet or equal a listed impairment. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583-84 (7th Cir. 2006). An ALJ must receive an expert opinion on the issue of medical equivalence, and the opinions of state agency psychological consultants, such as Dr. Kennedy and Dr. Larsen, may constitute substantial evidence on that issue. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004);

SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). However, an ALJ is not bound by a state agency consultant's finding on equivalence. *See* SSR 96-6p, 1996 WL 374180, at *3.[3] Nevertheless, an ALJ is required to obtain an updated medical opinion from a medical expert if (1) no additional medical evidence is received but the ALJ believes a finding of medical equivalence may be reasonable or (2) additional medical evidence is received and the ALJ believes that the new evidence may change the state agency medical or psychological consultant's finding that the claimant's impairment does not medically equal a listed impairment. *Id*. at *3-4.

Dr. Kennedy and Dr. Larsen found that Plaintiff did not meet Listings 12.04 and 12.06, and the ALJ relied on their opinions to make his step three finding. However, on January 17, 2017, new names and new criteria for Listings 12.04 and 12.06 were adopted, which was after Dr. Kennedy and Dr. Larsen's opinions and after the December 14, 2016 hearing but before the ALJ's March 8, 2017 decision. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.05; 81 Fed. Reg. 66138, 2016 WL 5341732 (Sept. 26, 2016). In his March 8, 2017 decision, the ALJ applied the new Listings. However, the ALJ did not address the fact that the Listings contained new criteria not considered by Dr. Kennedy and Dr. Larsen. Not only did the ALJ fail to acknowledge that the opinion evidence he relied on was based on different criteria, the ALJ did not discuss whether Dr. Kennedy and Dr. Larsen's opinions were sufficient on the issue of medical equivalence in light of the new criteria. In other words, there is no indication that the ALJ even considered whether, much less believed, the new evidence may change the state agency psychological consultants' finding that Plaintiff's impairment does not medically equal a listed impairment.

---

[3] Effective March 27, 2017, SSR 96-6p was rescinded and replaced by SSR 17-2p. *See* SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017). Because the ALJ's decision in this case was issued on March 8, 2017, before the effective date of rescission, the Court applies SSR 96-6p on this appeal.

Plaintiff specifically argues that his anxiety meets the new criteria for Listing 12.06, now titled anxiety and obsessive-compulsive disorders, by satisfying the A and C criteria. Plaintiff contends that the worsening, changing, and progression of his anxiety, panic, agoraphobia, depression, and memory issues required an updated opinion to determine whether the combination of the medical evidence at the time of the hearing medically equaled the new versions of the Listings. Plaintiff has identified sufficient evidence of record such that in the absence of an updated medical opinion on equivalence, the Court cannot say that the ALJ's step three determination is supported by substantial evidence. The Court remands on this issue so that the ALJ has an opportunity to obtain a medical opinion under the new listings for the applicable mental disorders and to determine whether Plaintiff meets the applicable listings in light of the post-December 2014 medical evidence.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief [DE 24], **DIRECTS** the Clerk of Court to enter judgment in favor of Plaintiff, and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 5th day of February, 2019.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record